UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TRAVIS MAKI,<br><br>    Petitioner,<br><br>    v.<br><br>JAMES D. HARTLEY,<br><br>    Respondent.<br>                                   / | No. C 09-5082 SI (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY AS TO ONE ISSUE** |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2006, petitioner was convicted by a Contra Costa County Superior Court jury of one count of committing a lewd act on a child under the age of 14, consequent to which petitioner was sentenced to 6 years in state prison. Evidence presented at trial demonstrated that petitioner sexually molested a minor female, Jane, the daughter of petitioner's friends. As grounds for

federal habeas relief, petitioner claims that his defense counsel rendered ineffective assistance by failing to object to the testimony of two witnesses.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

2

## DISCUSSION

Petitioner claims that his defense counsel rendered ineffective assistance when he failed to object to the testimony of (1) petitioner's former wife, Helen, and (2) defense expert Dr. Coleman.

### 1. Helen

Petitioner contends that defense counsel should have objected to Helen's testimony on the grounds that it was barred by the marital privilege. At trial, Helen testified that during their marriage she and her husband used ice cubes to enhance their sexual pleasure. She testified that her husband, "maybe five or six times," used his hand and mouth to apply ice onto her vagina and clitoris. She also recounted in her testimony petitioner's statements that he wanted to use ice for oral sex, and that he had "liked it" when he used ice with his ex-girlfriend. Helen's testimony was offered to corroborate Jane's trial testimony that petitioner had on several occasions inserted ice cubes into her vagina. (Ans., Ex. 6 at 5.) Defense counsel objected to Helen's testimony on grounds that it was not probative, an objection the trial court overruled, but counsel did not raise a marital privilege objection. (*Id.* at 9.)

The state appellate court held that Helen's recounting of petitioner's *statements* fell under the marital privilege, but her testimony recounting her husband's *physical acts*, such her statement that "maybe five or six times" petitioner placed ice cubes into her vagina, did not. Therefore, any marital privilege objection would have been futile as it would have been sustained only in part. "The witness would still have been permitted to offer testimony of [petitioner]'s previous use of ice during sexual activity with her." Even such redacted testimony would have corroborated Jane's testimony that petitioner put ice cubes on her genitals. (*Id.* at 9–11.)

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional

3

norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner has not shown prejudice. Helen's testimony loses little or no significance when shorn of petitioner's statements. More specifically, even redacted, the evidence that petitioner used ice cubes during sex corroborates Jane's testimony that petitioner used ice cubes on her, and bolsters her credibility. Petitioner, then, has not shown that if defense counsel had offered a marital privilege objection, there is a reasonably probability that the factfinder would have a reasonable doubt respecting guilt. Accordingly, petitioner's claim is DENIED for want of merit.

### 2. Dr. Coleman

Petitioner claims that defense counsel rendered ineffective assistance by eliciting testimony from a defense witness, Dr. Coleman, that corroborated the victim's testimony. More specifically, petitioner objects to the fact that Coleman reiterated bits of testimony from Alexander, Jane's brother, whose statements at trial corroborated his sister's testimony. The background facts are as follows:

> The defense also presented expert opinion testimony from Dr. Lee Coleman, a specialist in child psychiatry, on "children's memory and suggestibility and the potential impact that different types of questioning techniques have on children's memory and ability to recollect." Dr. Coleman reviewed the videotapes of the police interviews with Jane, Alexander and [petitioner]. He perceived that the integrity of Jane's interview was tainted by the failure of the interviewer to take

4

into account the victim's "prior conversations" with at least three people on the subject of the molestations. The recollections of children may be altered, influenced and subjected to suggestion by prior conversations and interactions with others, particularly parents or others they "want to please." Children are especially susceptible to alteration of memory "from some other source" in an effort to please others. The "bias or preconceived ideas" of someone who speaks to a child about sexual abuse may be communicated to that child and "contaminate the child's statements and possibly their actual memory."

. . . .

A "major concern" with Alexander's interview, according to Dr. Coleman, is that he had "been basically led to a situation" where he was "put under pressure" to give answers that corresponded to conversations with family members and his mother's characterization of him as "a witness to the molesting." As an example, Dr. Coleman pointed out that the interviewer suggested to Alexander that someone else was in the room with [petitioner], and Alexander then gave the answer, "Jane." Alexander then "expanded" upon his answer in the interview by saying [petitioner] was "holding ice in her genital area" because he "saw a little wet spot there" when Jane left the room. Dr. Coleman asserted that the interviewer improperly failed to delve into the serious discrepancies in Alexander's account of events or the potential influence upon him of the statements of his mother and others. Dr. Coleman offered his belief that the suggestive interview techniques may have created distorted or false memories in Jane and Alexander.

(Ans., Ex. 6 at 7–8.)

The facts underlying petitioner's habeas claim are:

We turn to [petitioner]'s complaint that counsel improperly elicited testimony from Dr. Coleman during the defense case that Alexander told an interviewer he had observed [petitioner] "on top of his sister in a room while holding an ice cube." During Alexander's testimony he denied that he told the interviewer he saw [petitioner] with an "ice cube" when he was carrying Jane, or that he teased the victim "about having a wet spot on her clothing." Then, in the course of questioning Dr. Coleman on the flaws of the interview process with the children, defense counsel asked for an explanation of the discrepancy between Alexander's initial proclamation that he "didn't see anything," and his subsequent statements. [petitioner] points out that Dr. Coleman testified Alexander was "led to a situation" by the interviewer following suggestive questioning where he ultimately stated he "saw Jane" with [petitioner] "on top" of her "holding an ice cube." During cross-examination by the prosecutor Dr. Coleman reiterated that Alexander "at first said he didn't see anything," then after questioning subsequently stated he saw [petitioner] on top of Jane "holding ice on her genital area." Dr. Coleman explained that given the context in which Alexander "started by saying I didn't see anything," the interviewer's "leading" questions may "lead a suggestible child to just go along with the interviewer."

[Petitioner] argues that his trial counsel's "inept questioning of his own witness" resulted in the presentation of corroborating evidence of the victim's description of the molestation from "a second percipient witness," through the statements of Alexander during his interview, that was not offered during the prosecution's case. [petitioner] adds the contention that counsel "compounded this critical mistake by failing to ask for a proper limiting instruction" to the jury to consider Dr. Coleman's testimony only for the "basis of his opinion," not as the truth of the

5

hearsay statements made.

(*Id.* at 12.) (footnote removed). The state appellate court rejected petitioner's ineffective assistance claim:

> The record before us is insufficient to establish that [petitioner] received inadequate representation . . . First, we observe that the vast majority of the testimony by Dr. Coleman on Alexander's statements to the interviewer of which [petitioner] now complains was directly adduced by the prosecutor, not defense counsel. More importantly, defense counsel reasonably may have concluded that it was in [petitioner]'s interest to present Dr. Coleman's complete portrayal and explication for the claimed unreliability of the children's statements due to the interview methods, much of which was entirely exculpatory to [petitioner]. Challenging the accuracy of the perceptions and recollections of both of the children was critical to the defense. Defense counsel may have decided that a brief reference to Alexander's statements to the interviewer was necessary to furnish the jury with an example of the manner in which his testimony may have been rendered suspect by the interview process. A rational tactical purpose for the testimony was that it was perceived by defense counsel to be essential for a thorough understanding of the reasons the expert offered for discounting the credibility of Alexander's testimony, and more beneficial to the defense than overlooking some of the basis for Dr. Coleman's opinions.

(*Id.* at 13–14.) The court also found defense counsel's decision not to ask for a limiting instruction was a reasonable tactical decision. (*Id.* at 15.)

The Court cannot say that it was unreasonable for the state appellate court to determine that there was insufficient evidence to establish a claim of ineffective assistance of counsel.

As to defense counsel's performance, the state appellate court determined that the record was insufficient to establish that counsel's performance was deficient. While, in hindsight, defense counsel's strategy might have been flawed, this Court cannot say that the state appellate court's assessment of this question was unreasonable.

As to prejudice, the state appellate concluded that petitioner failed to show that there was a reasonable probability the outcome of the proceeding would have been different had counsel not questioned Coleman as he did. This Court does not find that conclusion unreasonable. Deference to the state appellate court's decision is supported by the fact that Jane's credibility was significantly bolstered by Helen's testimony, and by Alexander's trial testimony as a prosecution witness that he discovered petitioner lying on top of his sister in a bed in a room Alexander had to unlock before entering (Ans., Ex. 2, Vol. 2 at 436–39 & 447–49), and that at

other times he discovered petitioner alone with Jane, who was seen lying in bed, (*id.* at 451–57). On such a record, petitioner has not shown that but for defense counsel's performance there is a reasonable probability that the outcome of the proceeding would have been different. Accordingly, the claim is DENIED for want of merit.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

Reasonable jurists, however, would find the Court's assessment of the following claim debatable: whether defense counsel's questioning of Dr. Coleman constituted ineffective assistance. Accordingly, a certificate of appealability is GRANTED as to that claim only. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability is DENIED as to all other claims because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Petitioner may seek a certificate of appealability as to these other claims from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

DATED: November 3, 2011

SUSAN ILLSTON
United States District Judge

7